Grace Malmberg sued American Honda Motor Company, Inc., and Tri-States, Inc., d/b/a Smith Honda, alleging fraud.[1] The court entered a summary judgment for American Honda, on the fraud claim, and made it final pursuant to Rule 54(b), Ala. R.Civ.P. Malmberg appeals.
Under the applicable standard of review, we must view the evidence before the court on the summary judgment motion in the light most favorable to Malmberg, the nonmoving party; seeWest v. Founders Life Assurance Co., 547 So.2d 870
(Ala. 1989); Ala. Code 1975, § 12-21-12. Viewed in that light, the evidence suggests the following facts:
Tri-States was an independently owned and operated Honda automobile dealership in Dothan, Alabama. American Honda was a distributor of new Honda products for the Tri-States dealership and for other independently owned dealerships in the Southeast. American Honda and Tri-States entered into an "Automobile Dealer Sales and Service Agreement," which outlined the relationship between American Honda and Tri-States through which Tri-States was to sell cars and provide warranties on Honda products. As set forth in the agreement, American Honda recognized that the Honda product was marketed through a system of automobile dealers developed by American Honda; that customers had a vital interest in that system; and that American Honda had the responsibility of administering that system and selecting suitable dealers. The agreement required Tri-States to provide a place of business, including sales, service, and parts departments, according to American Honda's specifications; to keep adequate working capital and net worth; to develop public interest in Honda products; and to keep accurate and current a uniform accounting system in accordance with American Honda requirements. American Honda controlled the advertising by dealers by requiring certain types and kinds of signs, and it authorized the promotion and display of Honda trademarks. American Honda imposed upon its dealers the obligation to "expressly provide to a customer that [an American Honda] warranty goes with" the vehicle.
In the spring of 1991, Malmberg purchased a used 1990 Honda automobile from Tri-States. She had never dealt with Tri-States before that time, but came to that dealership after noticing a Honda advertisement in a *Page 890 
newspaper. When she went to Tri-States, she felt comfortable that she was dealing with "Honda," because she saw Honda brochures, booklets, awards, and plaques on the walls. She asked the Tri-States salesman for "a reliable car that had no problems [and that was] in perfect condition." The salesman showed her the 1990 Honda she ultimately purchased, representing that it was in perfect condition, that it had been fully checked out, that it had no problems, and that it was an excellent car. He also told her that the car (which had only 8,308 miles on its odometer when she purchased it) came with a 3-year, 36,000-mile "bumper-to-bumper" warranty. She asked if there was anything wrong with the car, and the salesman told her that she would have no trouble with it, but that if she did the problem would be covered under the warranty, wherever she lived. She was handed a document purporting to show that the car was being delivered to her under the terms "AS IS-NO WARRANTY"; she then questioned whether there was a bumper-to-bumper warranty from "Honda" covering the car. She was assured that the Honda warranty would fully cover the car "bumper-to-bumper," and the salesman for Tri-States wrote on the face of the warranty document, which she signed, "REMAINDER OF FACTORY ONLY." Malmberg was given an owner's manual when she purchased the vehicle, but she was not given a warranty book at that time. According to Malmberg, she relied on the advertisements, signs, plaques, and brochures and other literature for her belief that she was dealing with "Honda," and she said she would not have purchased the 1990 Honda had there not been a "Honda" warranty covering that vehicle bumper-to-bumper so that if she had a problem with the vehicle "it would be taken care of without [her incurring] expense."
After purchasing the vehicle, she began having problems with it; to see about the problems, she took it to a different Honda dealership. Employees of that other dealership told her that the vehicle was bent underneath, that it had been wrecked, that it had frame damage, that it had been improperly repaired, that it was unsafe to drive, and that the Honda warranty would not cover the automobile in regard to problems caused by the wreck damage. American Honda, in its brief on appeal, states that "[a]ny damaged part would not be covered by warranty" and that "[a] dealer is authorized" to determine "whether a part is warranted." Having been advised that the vehicle was unsafe to drive, Malmberg parked it but continued to make payments on the loan she had taken to pay the purchase price of the vehicle.
The issue before us is limited to whether the evidence of the alleged representation by Tri-States as to the extent of the coverage of the warranty provided substantial evidence of an agency relationship between American Honda and Tri-States.
Agency is generally a question of fact to be determined by the trier of fact. See Oliver v. Taylor, 394 So.2d 945
(Ala. 1981). When a defendant's liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency. Carlton v. Alabama Dairy Queen, Inc.,529 So.2d 921 (Ala. 1988); Wood v. Shell Oil Co.,495 So.2d 1034 (Ala. 1986). The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance. Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract.Id.
The plaintiff presented no evidence that American Honda retained control over the manner in which Tri-States performed in order to meet the requirements of the dealership agreement. Under the dealership agreement, American Honda reserved the right to inspect the Tri-States business operations to determine if Tri-States was conforming to the dealership agreement, but American Honda did not provide day-to-day supervision for Tri-States and did not determine how
Tri-States was to comply with the terms of the agreement. Rather, the dealership agreement left Tri-States in charge of *Page 891 
determining how to conduct its business in order to comply with the requirements of the agreement.
Nevertheless, Malmberg argues that Tri-States could be found to be the agent of American Honda either through an agency by estoppel or through an apparent agency. The test for determining whether an agency existed by "estoppel" or by "apparent authority" is based upon the potential principal's holding the potential agent out to third parties as having the authority to act:
 "While some suggestion has been made that a distinction exists between apparent authority and authority grounded on estoppel, . . . our cases and authority generally base the two upon the same elements.
 " ' "As between the principal and third persons, mutual rights and liabilities are governed by the apparent scope of the agent's authority which the principal has held out the agent as possessing, or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny."
 " 'Such apparent authority is the real authority so far as affects the rights of a third party without knowledge or notice. . . .' . . .
 " 'When one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency. . . .' . . .
 " 'The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority; that is to say, the two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon the same as though it were the authority actually conferred upon the agent.' "
Pearson v. Agricultural Insurance Co., 247 Ala. 485,488, 25 So.2d 164, 167 (1946) (citations omitted); see Woodv. Shell Oil Co., supra, 495 So.2d at 1038. The doctrine of apparent authority is based upon the actions of the principal, not those of the agent; it is based upon the principal's holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be. See Automotive Acceptance Corp. v.Powell, 45 Ala. App. 596, 234 So.2d 593 (Ala.Civ.App. 1970), quoted with approval in Massey-Ferguson, Inc. v.Laird, 432 So.2d 1259 (Ala. 1983).
Under the facts of this case, although there was evidence that Honda logos were displayed upon signs, literature, products, brochures, and plaques at the Tri-States place of business, that evidence was "not sufficient, initself, to create an inference of agency." Wood v.Shell Oil Co., supra, 495 So.2d at 1039 (emphasis in original). However, we hold that this evidence, together with the other evidence presented by Malmberg, was sufficient to create a genuine issue of material fact as to whether Tri-States was American Honda's agent with respect to the representation regarding the Honda warranty. She presented substantial evidence that American Honda provides a warranty and the mechanics for assuring that a warranty is provided to a Honda purchaser only through a Honda dealer, such as Tri-States; that American Honda instructs and trains its dealers, as it did Tri-States, as to what warranties are or are not available on Honda products, new and used; and that she relied on the representation of Tri-States regarding the extent of the Honda warranty available on the vehicle she purchased from Tri-States as being a representation of American Honda.
For the foregoing reasons, we reverse the summary judgment for American Honda and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.
[1] Malmberg also stated claims alleging negligent supervision and breach of warranty; however, those claims are not involved in this appeal. The claims against Tri-States were stayed because of that defendant's proceedings in a bankruptcy court. *Page 892