YATES, Judge.
Terry Joanne Williams sued Harold L. Martin Distributing Company, Inc., d/b/a Martin Food Mart No. 5 (“Martin Distributing”), and Chevron U.S.A., Inc. (“Chevron”). Williams alleged that Martin Distributing had negligently constructed and negligently maintained a wheelchair ramp and adjacent curb and sidewalk and that its negligence had caused her to fall and be injured. Williams’s complaint further asserted that Chevron was vicariously liable for Martin Distributing’s alleged negli *308 gence. Martin Distributing and Chevron moved for a summary judgment. The trial court, without stating its reasons, granted the motion on May 27, 1998, and entered a judgment. Williams appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
A summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Hinkle v. Burgreen Contracting Co., 678 So.2d 797 (Ala.Civ.App.1996). Substantial evidence is “evidence of such weight and quality that a fair-minded person in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether substantial evidence exists to defeat a summary judgment motion, the court must view the evidence in a light most favorable to the nonmoving party. Goodwin v. City of Fultondale, 706 So.2d 766 (Ala.Civ.App.1997).
Martin Distributing owns several gas station/convenience stores in the Hamilton area. Martin Distributing was a “jobber” for Chevron, and it sold Chevron’s gasoline and its other fuel products through its outlets.
Around noon on .February 27, 1995, Williams drove her automobile into the gas-pump area of one of Martin Distributing’s stores to buy gasoline. Williams had been to this convenience store before her accident. After Williams .finished filling her tank with gasoline, she walked toward the entrance of the store to pay for her gasoline. Before she reached the entrance, she tripped and fell outside the front door, in the area of the sidewalk, curb, and wheelchair ramp.[1] Williams was injured as a result of her fall.
The parties agree that Williams was an invitee of Martin Distributing. An invitor owes an invitee a duty to “use reasonable care and diligence to keep the premises in a safe condition or, if the premises [are] in a dangerous condition, to give sufficient warning so that an invitee [may] avoid danger by the use of ordinary care.” Boudousquie v. Marriott Management Services Corp., 669 So.2d 998, 1000 (Ala.Civ.App.1995). This duty applies only as to hidden defects that are unknown to an invitee and would not be discovered by him in the exercise of ordinary care. Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158 (Ala.1997). The owner of the premises is not an insurer of the safety of the invitee, and no presumption of negligence arises out of the mere fact of an injury to the invitee. Id. at 161. The premises owner “ ‘has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care.’ ” Id. (quoting Shaw v. City of Lipscomb, 380 So.2d 812, 814 (Ala.1980)). A condition is “obvious” if the risk is apparent to, and is of the type that would be recognized by, a reasonable person in the position of the invitee. Hartzog v. Compass Bank, 686 So.2d 325 (Ala.Civ.App.1996). A condition is “known” if the invitee is aware of the existence of the condition and appreciates the danger involved. Id. Questions of openness and obviousness of a danger are generally not to be resolved on a motion for summary judg *309 ment. Harris v. Flagstar Enterprises, Inc., 685 So.2d 760 (Ala.Civ.App.1996).
Williams argues that she presented to the trial court substantial evidence indicating defects in the sidewalk, curb, and wheelchair ramp located at the entrance to the store. In support of her argument, Williams presented the affidavit of Rud B. Robison, Jr., who is a licensed architect in Mississippi and who has done work in Alabama and Mississippi. Robison’s testimony indicated that in the area where Williams tripped and fell there were a number of defects that the average person would not discover. Robison concluded that the entrance to the convenience store should open out onto an area level with the interior and that that area should extend for at least three feet from the threshold of the door. However, the entrance to Martin Distributing’s store is preceded immediately by a ramp without the flat surface outside the door. Robison further opined that the entrance is defective because the slope of the sides adjacent to the curb and wheelchair ramp exceed the maximum slope allowances under established architectural standards. Robison also expressed his opinion in his affidavit that the area should have been painted in contrasting colors to show the changes in elevations of the surfaces of the area.
This case is indistinguishable from Woodward v. Health Care Authority of the City of Huntsville, 727 So.2d 814 (Ala.Civ.App.1998). In Woodward, the plaintiff was blinded by a bright light before she tripped and fell over an unmarked curb at night in a hospital parking lot. The plaintiff testified that the contrast between the light in the parking garage and the light outside caused the walkway where she fell to give the appearance of “one massive area of cement.” 727 So.2d at 816. The expert in Woodward testified that, because of the lighting conditions, “you have just a flat concrete, and without any contrasting colors, you can’t see the ramp.” He also stated that “the curb is not visible, because it’s gray concrete and a gray concrete driveway.” 727 So.2d at 816. Similarly, in the instant case, Williams presented deposition testimony of an architect — Robison—who said that the entrance should have been painted in contrasting colors to indicate changes in elevation. Williams testified that where she fell “the curb and the concrete are both the same color of gray concrete.” This testimony from Williams and Robison supports Williams’s argument that the lack of contrasting colors created a defect. Moreover, the additional testimony from Robison, as an expert, that the area had defects in the ramp and the slopes that were not obvious and could not have been known to Williams, as a layperson, creates a question of fact for a jury. Therefore, Williams presented substantial evidence creating a question of fact for the jury: whether the sidewalk, curb, and wheelchair ramp presented a hidden defect that she could not have discovered in the exercise of ordinary care.
Martin Distributing and Chevron argue that Williams was contributorily negligent in not observing the area and in failing to step up high enough to avoid catching her foot on the curb. They contend that, because Williams had been to the store before, she had knowledge of any defect and, therefore, they say, her own inattention shows negligence on her part.
The question of the existence of contributory negligence is normally one for the jury. Wyser v. Ray Sumlin Constr. Co., 680 So.2d 235 (Ala.1996). The defendant bears the burden of proving the defense of contributory negligence. To prove it, the defendant must show that the plaintiff had knowledge of the dangerous condition; that he appreciated the danger, under the surrounding circumstances; and that, failing to exercise reasonable care, he placed himself in the way of danger. City of Lanett v. Tomlinson, 659 So.2d 68 (Ala.1995).
The defendants failed to show that Williams knew of the defects in the area. The simple fact that Williams had been to *310 the store before does not mean she knew of the danger posed by the defects in the area around the door.
Last, Chevron argues that Martin Distributing was not acting as its agent on the day of the accident, and, therefore, that the summary judgment was proper as to Chevron, even if a question of fact existed as to Martin Distributing’s negligence. We agree.
Agency is generally a question of fact to be determined by the trier of fact. Malmberg v. American Honda Motor Co., 644 So.2d 888 (Ala.1994). When a defendant’s liability is to be based on a theory of agency, the agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting the agency has the burden of presenting substantial evidence indicating the alleged agency. Id. The test to be applied in determining whether an agency relationship existed based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent’s performance. Id. Control must be proven, and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the terms of a contract. Id.
An agency relationship can also be created by estoppel or apparent agency, when the potential principal holds the potential agent out to third parties as having the authority to act. Id. Caselaw from our supreme court indicates that “apparent authority” of an agent is based on the same elements as authority grounded on “estop-pel,” in that the authority is created by the principal’s being estopped from denying the agent’s authority. Id. “‘“[T]he two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon the same as though it were the authority actually conferred upon the agent.” ’ ” Malmberg, 644 So.2d at 891, quoting Pearson v. Agricultural Insurance Co., 247 Ala. 485, 488, 25 So.2d 164, 167 (1946) (citations omitted).
In Malmberg, there was a question of fact whether an agency relationship existed between an automobile dealer and a manufacturer. The dealer displayed logos of the manufacturer upon signs, literature, products, and brochures at the dealer’s place of business. However, this alone was insufficient to create an inference of an agency relationship. In Malmberg, there was a fact question as to agency, because of this evidence when taken along with evidence of the manufacturer’s warranty offers made to customers through the dealer. The manufacturer provided a warranty, provided the mechanics to perform warranty work, and instructed and trained the dealer on which warranties were available, in addition to providing its advertising materials at the dealer’s place of business.
We find persuasive Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986). In Wood, the plaintiff sued Shell Oil Company and Parker Shell, a dealer for Shell, when he slipped and fell on ice while on the premises of Parker Shell. The trial court entered a summary judgment for Shell Oil, holding that Shell Oil was not vicariously liable for the negligence of Parker Shell. The plaintiff argued that the lease agreement and the dealer agreement between Shell Oil and Parker Shell created an agency relationship. In that case, Parker Shell purchased products from Shell Oil and retailed those products to Parker Shell’s customers. Shell Oil had the right to inspect Parker Shell’s premises and accounting books to determine compliance with the contracts. Parker Shell’s premises had to comply with Shell Oil’s architectural style, color, and design. Parker Shell employees, who wore uniforms with Shell Oil’s logo, received compensation directly from Parker Shell, and Parker Shell *311 had the exclusive authority to hire and fire employees. The supreme court held that although the lease and dealer agreement specified in some detail what Parker Shell must do to conform to the terms of these contracts and gave Shell Oil a right to approve certain aspects of Parker Shell's operation, Shell Oil did not determine how Parker Shell was to achieve compliance with the terms of the agreements. The court further held that there was no evidence from which to find an agency relationship based on estoppel or apparent authority.
Chevron had the right to inspect Martin Distributing’s premises. Employees of Martin Distributing had to wear uniforms with Chevron’s logo. Martin Distributing was required to display Chevron’s promotional material and Chevron’s logo. Customers were allowed to use Chevron credit cards to purchase gasoline. However, Chevron had no control over the day-to-day operations of the store. Chevron did not have the right to tell Martin Distributing how to construct the building or the parking lot. The employees were paid by Martin Distributing, and Martin Distributing had the exclusive right to hire and fire employees. In fact, the contract expressly prevented Chevron from exercising any control over the employees of Martin Distributing. In short, Williams presented no evidence indicating that Chevron had exercised control over Martin Distributing’s operation beyond that control necessary to protect its trademark.
Thus, the summary judgment was proper as to Chevron, because there was no evidence of an agency relationship between Chevron and Martin Distributing. However, the trial court erred in entering the summary judgment as to Martin Distributing, because there is a question of fact as to its negligence. Accordingly, the judgment is affirmed as to the defendant Chevron and reversed as to the defendant Martin Distributing, and the case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.

. Williams testified in her deposition that she is unsure whether she tripped over the curb or the wheelchair ramp.